IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>FRANGELYS LLELAMO PAREDES,<br>Defendant. | **8:26-CR-31**<br><br>**ORDER ON THE GOVERNMENT'S MOTION FOR REVIEW OF RELEASE ORDER** |

This matter is before the Court on the Government's Motion for Review of Release Order (Motion for Review) asking the Court to overrule a magistrate judge's order granting defendant Frangelys Llelamo Paredes pretrial release. Filing 62. On motion of the Government, the Court stayed the magistrate judge's release order pending the Court's ruling on the Motion for Review. Filing 62 (Motion for Stay); Filing 70 (Order Staying Magistrate Judge's Release Order). The Court ordered the defendant to file a written response to the Government's Motion for Review. Filing 70. On August 28, 2026, the defendant filed a Response to the Government's Motion for Review of Release Order. Filing 88.

The Court has conducted a *de novo* review of the record in this case and has considered the parties' submissions. For the reasons stated below, the Government's Motion for Review is granted, and the magistrate judge's release order is revoked.

## I. BACKGROUND

On February 18, 2026, the grand jury in the District of Nebraska returned a one-count Indictment charging nineteen coconspirators, including the defendant, with conspiracy to commit

money laundering in violation of 18 U.S.C. § 1956(h). Filing 1. The Indictment alleges that members of an "ATM jackpotting conspiracy" would deploy malicious software (malware) designed to exploit the vulnerabilities of Automated Teller Machines (ATMs) and Interactive Teller Machines (ITMs), causing the machines to dispense cash without debiting an account. Filing 1 at 2–3, 7. The Indictment alleges that the jackpotting attacks served as a "revenue stream" for Tren de Aragua (TdA), "a violent transnational criminal organization that originated as a prison gang in Venezuela in the mid-2000s" and that has been designated as a Foreign Terrorist Organization by the United States Secretary of State. Filing 1 at 1, 3, 6. The Indictment also includes a Forfeiture Allegation seeking forfeiture of at least $6,126,321.00 as proceeds traceable to the charged offense. Filing 1 at 8–9.

On July 30, 2026, the defendant was arrested in the Northern District of Illinois. *See* Docket, United States of America v. Llelamo Paredes, Case No. 1:26-cr-418-1 (N.D. Ill. 2026). The defendant made her initial appearance before a magistrate judge in that district on July 31, 2026. The Government moved for detention, and the magistrate judge granted the Government's motion to have a detention hearing. The detention hearing was held on August 5, 2026. Filing 64-3. The magistrate judge issued a written order that same day denying the Government's motion, saying "the Government failed to meet its burden and that conditions of release could be fashioned for the defendant to be released." Filing 64-3 at 1. However, the magistrate judge granted "[t]he Government's oral motion to stay" and ordered "[t]he Government [to] file by 1:00 p.m. on 8/7/26 a status report advising whether the appeal has been filed and the status of the motion." Filing 64-3 at 1.

On August 6, 2026, the Government filed a Motion for Stay and Review of Release Order in the District of Nebraska, requesting that this Court review and overrule the magistrate judge's

order. Filing 62. With the motion, the Government filed exhibits that included DHL shipping records, Filing 64-1, the defendant's immigration detainer, Filing 64-2, and the magistrate judge's August 5, 2026, order denying the Government's motion for detention, Filing 64-3.

In its Motion for Review, the Government proffers that a designated foreign terrorist organization, Tren de Aragua (TdA), engages in various criminal activities, including the commission of "jackpotting attacks targeting financial institutions in the United States and internationally." Filing 62 at 3. The Government avers that TdA "uses a money laundering network to transfer and conceal illegally obtained proceeds among its members and associates." Filing 62 at 3. The Government specifically avers,

> TdA's money laundering technique typically uses high velocity, low dollar transfers via peer-to-peer money transferring services such as Zelle, meaning their money launderers commonly send a significant number of transfers in lower dollar amounts to other individuals or shell companies. The unlawful proceeds then arrive at an account where they are then congregated before being sent overseas where they are then, ultimately, converted from fiat currency into cryptocurrency.

Filing 62 at 3.

The defendant is alleged to have been part of the TdA money laundering network. Filing 62 at 3. The Government avers that "[o]n January 1, 2025, Llelamo and Andruw Gabriel Melendez Mayora were captured on surveillance while making at least five $1,500 cash deposits into the Bank of American account ending in 4401 for Wladimir Jose Tejera Abreu, a defendant in 8:25CR242 who is charged with providing material support to terrorism among other crimes and a leader within the TdA jackpotting conspiracy." Filing 62 at 3. The Government also avers that "financial activity on Llelamo's credit card, as reflected from records obtained from JP Morgan Chase, place her in the same vicinity of ATM jackpotting attacks." Filing 62 at 4. For instance, "Llelamo's credit card records reflect purchases being made on April 26 and 27, 2025 . . . in central Nebraska in Grand

Island, Kearney, Gibbon, and Paxton, Nebraska." Filing 62 at 4. The Government maintains that "[o]n April 27 and 28, 2025, central Nebraska was struck by numerous ATM jackpotting attacks by defendants in 8:25CR190." Filing 62 at 4 (providing a table alleging six jackpotting attacks between April 27 and 28, 2025, that took place in North Platte, Kearney, Juniata, and Kenesaw, Nebraska). Additionally, the Government avers that "[o]n May 2, 2025, there was an ATM jackpotting attack at Energcomm Federal Credit Union in Butte, Montana, in which $37,200 was stolen." Filing 62 at 5. Credit card purchases on Llelamo's credit card "place her in Butte, Montana on May 3 and 4th." Filing 62 at 5. The Government provides additional credit card transactions that place the defendant near jackpotting locations close to the time institutions were attacked. Filing 62 at 5–6.

The Government also avers,

> Llelamo's financial activity reflects additional payments to known members of the jackpotting conspiracy over Zelle to include leaders within the conspiracy such as Wladimir Jose Tejera Abreu (under nickname "Wladi"), Jose Wladimir Tejera Abreu (under nickname "Nene"), the facilitator "Berliiiiiiin"/"Berlon" [sic] (believed to be "Berlin"), and the facilitator "Magia." Llelamo also sent a Zelle payment to "Snaider" on July 7, 2025, which follows Snaider Sthiferson Castro Hidalgo and Christian Manuel Tovar-Olivares's arrest in Kearney, Nebraska following their attempted jackpotting at Heartland Bank on July 5, 2025.

Filing 62 at 6.

Moreover, the government avers that the defendant "receiv[ed] ATM keys being shipped into the United States from Mexico by leadership of the conspiracy to be disseminated to ATM jackpotting crews." Filing 62 at 7. According to the Government, keys, "believed to be ATM keys," were shipped from known members of the conspiracy" to a recipient listed as "Luis Diaz" or "Luiz Diaz." Filing 62 at 6. However, the Government avers that the real recipient was the defendant.[1]

[1] The Government avers that "[a]ll attempts to verify the existence of Luiz Diaz or Luis Diaz have failed, which, along with [Llelamo's] phone number and address being used, support the conclusion that Llelamo was the true recipient of the keys, and that the name Luiz Diaz was utilized to try and obfuscate her true identity." Filing 62 at 7.

The Government avers that, "[f]or her Zelle token, Llelamo used the [phone] number 872-218-1420, as her recipient token on June 1, 2025." Filing 62 at 6. This was the same phone number listed on the DHL shipping records relating to the keys. Filing 64-1 at 4–5, 7–8. Moreover, the shipping records state that the recipient address was 6752 South Michigan Avenue, Apartment #2, Chicago, Illinois. Filing 64-1 at 1–8. The defendant provided this address to pretrial services in the Northern District of Illinois. *See* Filing 82-17 at 1–2.

DHL shipping records show that the first shipment of keys occurred on September 25, 2025. The first shipment was sent by Jahidy Benitez from Miami, Florida. Filing 64-1 at 1. Benitez is a defendant in 8:25CR242. The second and third shipments occurred on October 21 and 23, 2025. The second and third shipments were sent by "Rommei Xavier Lopez Duarte" from Mexico. Filing 64-1 at 3, 6. Romnei Xavier Lopez Dugarte is a defendant in 8:25CR242. In that case, the Indictment charges Benitez and Lopez Dugarte with *inter alia* conspiracy to provide material support to terrorists. Filing 5 at 11 in 8:25CR242.

The Government also avers that the defendant is from Venezuela, and there is a Department of Homeland Security immigration detainer in place for her. Filing 62 at 7; Filing 64-2 (Immigration Detainer).

On August 7, 2026, this Court issued an order staying the magistrate judge's August 5, 2025, release order pending the Court's ruling on the Government's motion for review of the magistrate judge's release order. Filing 70 at 2. The Court ordered the defendant to file a written response to the Government's motion. Filing 70 at 2

The defendant filed her Response to the Government's Motion for Stay and Review of Release Order on August 28, 2026. Filing 88. The defendant maintains that "[t]he Government must show by clear and convincing evidence that no condition or combination of conditions will

reasonably assure the safety of the community, and by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Llelamo's appearance." Filing 88 at 3 (citing 18 U.S.C. § 3142(f)). The defendant argues that the Government fails to meet the applicable burdens "when the § 3142(g) factors are considered together, rather than allowing any single factor particularly the weight of the evidence, to control the analysis." Filing 88 at 3. Defendant argues that this is so for several reasons. First, the defendant argues that the nature and circumstances of the offense do not support detention because "[t]his is a financial offense. It is not a crime of violence." Filing 88 at 3. Second, the defendant asserts that the factor relating to "weight of the evidence" "should not be singled out." Filing 88 at 3–4. Third, the defendant argues, citing caselaw from the United States District Court for the District of Minnesota and the United States Court of Appeals for the Ninth Circuit, that "[s]tanding alone, immigration status and the existence of an ICE detainer cannot justify detention." Filing 88 at 4 (citing cases). Finally, the defendant argues that she does not pose a danger to any person or the community. Filing 88 at 5.

## II. APPLICABLE STANDARDS

A magistrate judge's decision to release or detain a defendant pending trial is governed by 18 U.S.C. § 3142. Under 18 U.S.C. § 3145(a), "the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation" of a magistrate judge's order granting a defendant pretrial release. 18 U.S.C. § 3145(a)(1). The Government's "motion shall be determined promptly." 18 U.S.C. § 3145(a). The district court's review of a magistrate judge's pretrial release order is *de novo*. *See* *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc) (noting that the district court proceeds *de novo* in its review of a magistrate judge's pretrial bond order); *United States v. Cook*, 87 F.4th 920, 921 (8th Cir. 2023) (referencing the district court's *de novo* review of the magistrate judge's pretrial detention order).

Under 18 U.S.C. § 3142(e)(1), a defendant will be detained pending trial if there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community." The Eighth Circuit Court of Appeals has explained that the Government bears different burdens of proof for showing that the defendant is a flight risk, *i.e.*, that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant, and for showing that the defendant is a safety risk, *i.e.*, that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community. *See* *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). Specifically, pretrial detention is warranted "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will *reasonably assure* the defendant's appearance. . . ." *Id.* at 797 (emphasis and ellipses in the original) (quoting *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003)). In determining whether the Government has met its burdens to prove that the defendant is a flight risk and a safety risk, the Court considers the following factors:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person, including—
>
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III. LEGAL ANALYSIS

The Government argues that the defendant should be detained pending trial because "there are no conditions that will reasonably ensure her appearance" and because "Llelamo's participation in money laundering activity in connection with a designated foreign terrorist organization and her association with leaders engaged in criminal activity pose a danger to any person and the community." Filing 62 at 7, 10. The Court has conducted a *de novo* review of the record and finds that the Government has met its burden to prove that the defendant is both a flight risk and a safety risk. Accordingly, the Court concludes that the defendant shall be detained pending trial. Because the Court can determine this matter on the record before it, the Court further concludes that there is no need to hold a hearing. *See United States v. Martin*, 447 F.Supp.3d 399, 402–03 (D. Md. 2020) ("However, 'there is no statutory requirement that the court hold a hearing' and the court 'retains the discretion to decide whether to hold a hearing.'" (quoting *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019))).

The Court has evaluated the four factors set out in 18 U.S.C. § 3142(g) in reaching this conclusion and "take[n] into account the available information concerning" those factors. The Court considered the "nature and circumstances of the offense charged," conspiracy to commit money laundering, with respect to co-defendant Estefany Galindez Lopez in *United States v. Galindez Lopez*, 8:26-CR-31, 2026 WL 1506717 (D. Neb. May 29, 2026) and co-defendant Andruw

Melendez Mayora in *United States v. Melendez Mayora*, 8:26-CR-31, 2026 WL 2455161 (D. Neb. Aug. 21, 2026). *See, e.g.*, *Galindez Lopez*, 2026 WL 1506717 *4 (explaining the "nature and circumstances" for the same charged offense in the same case for purposes of reviewing a magistrate judge's release order as to co-defendant Estefany Galindez Lopez). In that case, the Court found that the "nature and circumstances of the offense charged" supported detention. *Id.* As in that case, "[a]lthough conspiracy to commit money laundering is not one of the offenses enumerated in 18 U.S.C. § 3142(g)(1), the allegations in the Indictment are sufficiently serious in nature and suggest the defendant's participation in a complex wide-reaching scheme with direct ties to a designated Foreign Terrorist, TdA." *Id.* These circumstances again support detention. *Id.*

The Indictment alleges that members and associates of TdA have used ATM jackpotting attacks to steal millions of dollars from financial institutions by conducting surveillance, breaking into ATMs, and deploying malware that forces the ATMs to dispense cash. Filing 1 at 3; *see* Filing 62 at 2–3. "The Indictment asserts that proceeds of the jackpotting attacks are split among many individuals, with the participants in a particular attack keeping a percentage of the proceeds and the remainder being delivered, distributed, transferred, or deposited with other members of the conspiracy, including conspiracy leaders and leaders of TdA." *Galindez Lopez*, 2026 WL 1506717, at *4 (citing Filing 1 at 7). The Indictment "also alleged that members of the conspiracy use 'high-velocity, low dollar transfers over peer-to-peer payment applications' to move the proceeds after an attack, and that the accounts connected to the payment applications are in individuals' names or in the names of business that are typically both Limited Liability Companies and shell companies." *Id.* (citing Filing 1 at 7). "The criminal activity alleged in this case is sophisticated and lucrative, and it apparently fits into a much bigger picture than the jackpotting attacks alone, as the Government contends that the proceeds obtained by the jackpotting attacks are funneled to TdA, which 'has an

extensive portfolio of criminal activities to include, illegal gold mining, drug trafficking, firearms trafficking, commercial sex trafficking, kidnapping, robbery, theft, fraud, and extortion.'" *Id.* (internal quotation marks omitted) (citing Filing 1 at 1, 6); Filing 62 at 2–3. The Court finds in this case, as it did in *Galindez Lopez* and *Melendez Mayora*, that "the nature and circumstances of the offense charged weigh in favor of detention." *Id.*; *see also Melendez Mayora*, 2026 WL 2455161.

Second, the Court has considered the "weight of the evidence" against the defendant and finds that this factor also weighs in favor of detaining the defendant pending trial. 18 U.S.C. § 3142(g)(2). According to the Government's proffer, "[o]n January 1, 2025, Llelamo and Andruw Gabriel Melendez Mayora were captured on surveillance while making at least five $1,500 cash deposits into the Bank of America account ending in 4401 for Wladimir Jose Tejera Abreu, a defendant in 8:25CR242 who is charged with providing material support to terrorism among other crimes and a leader within the TdA jackpotting conspiracy." Filing 62 at 3; *see* Filing 5 at case no. 8:25CR242 (Indictment charging Abreu with *inter alia* providing material support to terrorism). In addition to evidence showing that Llelamo and Melendez Mayora made what could be described as "high velocity, low dollar" deposits to Abreu, the Government has provided the defendant's financial activity which strongly suggests that the defendant was also participating in or providing assistance to various jackpotting attacks. Filing 62 at 4 (showing that Llelamo's credit card records show purchases on April 26 and 27, 2025, in central Nebraska and asserting that "on April 27 and 28, 2025, central Nebraska was struck by numerous ATM jackpotting attacks by defendants in 8:25CR190"); Filing 62 at 5 (asserting that "[o]n May 2, 2025, there was an ATM jackpotting attack at Energcomm Federal Credit Union in Butte, Montana, in which $37,200 was stolen" and showing that the defendant made purchases that placed her in Butte, Montana on May 3, 2025). Moreover, the Government provides compelling evidence that the defendant was receiving ATM keys from

leaders in the conspiracy given that the phone number that the defendant apparently used for her Zelle token and the address that the defendant provided to pretrial services in the Northern District of Illinois were listed on the DHL shipping records that showed the shipment of keys from leaders within the conspiracy. Filing 62 at 6; Filing 64-1; *see* Filing 5 at 11 in 8:25CR242 (charging Benitez and Lopez Dugarte with *inter alia* conspiracy to provide material support to terrorists).

Third, the Court has examined the "history and characteristics" of the defendant. 18 U.S.C. § 3142(g)(3). The Government argues that "Llelamo has significant ties overseas. She is a national of Venezuela who has previously lived in Peru and who has family residing in Peru and Venezuela. Llelamo also has a valid immigration detainer in place. Llelamo has repeated financial interactions with other members of the conspiracy to include leaders within the conspiracy who are in Venezuela and elsewhere." Filing 62 at 10. The Indictment, the Government's factual proffer, and the Government's submitted evidence support such ties to Venezuela and TdA. *See* Filing 1; Filing 62 at 2–7; Filing 64-1; Filing 67-2. The Court concludes that the defendant's ties to both Venezuela and to a Foreign Terrorist Organization support detention. The balance of the evidence, considered against the backdrop of the allegations in the Indictment, show that the "history and characteristics" of the defendant make detention appropriate.

Lastly, the Court has considered "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g)(4). The Court's analysis on this factor relies on many of the factual circumstances discussed above. Relevant to this factor, as discussed elsewhere, is the connection between the alleged criminal activity and TdA. As discussed elsewhere, leaders of the conspiracy that have been charged with providing material support to terrorists placed trust in the defendant, as she was apparently sent ATM keys by such leaders. Additionally, the Government's proffer indicates that "[o]n January 1, 2025, Llelamo

and Andruw Gabriel Melendez Mayora were captured on surveillance while making at least five $1,500 cash deposits into the Bank of American account ending in 4401 for Wladimir Jose Tejera Abreu, a defendant in 8:25CR242 who is charged with providing material support to terrorism among other crimes and a leader within the TdA jackpotting conspiracy." Filing 62 at 3. What the Court explained in *Galindez Lopez* is true here too: "The Court is particularly concerned with the role TdA is alleged to play in the offense charged and with the defendant's alleged connections to TdA given TdA's status as a designated Foreign Terrorist Organization and the violent criminal activities TdA is accused of perpetrating." 2026 WL 1506717, at *5. The Court concludes that these facts weigh in favor of pretrial detention.

## IV. CONCLUSION

Based on the Court's *de novo* review of the record in this case—including the facts alleged in the Indictment, and the parties' arguments and proffered evidence—the Court finds that the Government has met its burden to prove by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance. The defendant has significant ties to Venezuela. Additionally, her immigration status in the United States and her association with members of the conspiracy located in Venezuela suggest that it is more likely than not that the defendant poses a flight risk. The Court also finds that the Government has met its burden to prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. As with co-defendants Galindez Lopez and Melendez Mayora, the charged offense is not a violent offense. However, the Court believes the Government has proffered sufficient evidence at this time connecting the charged offense to a violent organization and connecting the defendant to both alleged members of and alleged conduct committed by that organization. Taken together, the nature and circumstances of

the charged offense, the weight of the evidence against the defendant, her ties to Venezuela, and her association with alleged TdA members all demonstrate a high probability that the defendant poses a safety risk.

The Court therefore grants the Government's Motion for Review of Release Order and revokes Magistrate Judge Weisman's order releasing the defendant pending trial.

Accordingly,

IT IS ORDERED:

1. The Government's Motion for Review of Release Order, Filing 62, is granted;

2. Defendant Frangelys Llelamo Paredes is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel; and

4. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated this 3rd day of September, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge